## Richmond

HARVEY CHRISTIAN v. COMMONWEALTH OF VIRGINIA.

June 16, 1969.

Record No. 6949.

Present, All the Justices.

*George W. Wooten* (*Hunter, Fox, Trabue & Renick*, on brief), for plaintiff in error.

*William P. Bagwell, Jr., Assistant Attorney General* (*Robert Y. Button, Attorney General*, on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

The defendant, Harvey Christian, seeks a reversal of the judgment of the lower court convicting him of statutory burglary and sentencing him to two years in the penitentiary. He alleges that the evidence is insufficient.

On April 13, 1967, Officer J. E. Castleman, of the Roanoke City Police Department, arrested defendant and his companion for drunk-

enness. The arrest was made on Albemarle Street near a point where it intersects with Jefferson Street, and approximately 2 blocks from a residence owned by Mrs. E. L. Cabiness, located at 1015 South Jefferson Street.

When arrested, defendant became disorderly and this charge was also placed against him. At the time, defendant and his companion were carrying large bags containing glasses, a flashlight, a magnifying glass, pan, silver card case, razors, knife, two clocks and a gold vase.

Defendant claimed ownership of all the property in the bags and stated that it was part of an inheritance from his mother. He said she had died recently, but never would tell the officers where her house was located.

Thereafter, on April 19, 1967, Mrs. Maude Myers requested Sergeant G. O. Wills, of the Roanoke City Police Detective Bureau, to make an investigation of an alleged burglary of the home of Mrs. Cabiness. His investigation disclosed that the Cabiness home had been entered through a window on the south side of the house. The glass had been broken and the window raised. Upon entering the dwelling, the officer discovered that the house had been ransacked, and there was evidence that someone had stayed in it. Empty wine bottles, partially consumed food and "stuff" had been thrown on the floor. The beds were "messed up" and were in disarray. The officer testified: "The whole house was in a wreck in that drawers was dumped on the floor all over the house, general ransacked."

Mrs. Myers, who was present when the officer investigated, said that "[e]verything was torn up". She said that the back door had been broken in and was open; that the dining room window had been knocked out; and that the lock on the front door had been broken, and the bolt from it was found on a table in the hall.

Mrs. Cabiness is an elderly lady who lives with her children in Toledo, Ohio. The residence was her home place and had been in the family for a great number of years. It was not occupied at the time but was completely furnished and contained a large quantity of valuable antique furnishings. Mrs. Cabiness requested that her sister, Mrs. Mattie Jamison, and three friends, Mrs. Leona C. Rasmussen, Mrs. Maude Myers and a Mrs. McIndoe, "look after her property" during her absence. Mrs. McIndoe lives two doors from the Cabiness home, and it was she who discovered that it had been burglarized and called Mrs. Myers.

Mrs. Jamison identified the various items, found in the possession

of defendant on April 13, 1967, as the property of her sister, Mrs. Cabiness, and as having been taken from the Cabiness home. Many of the items formerly belonged to her mother, and this witness said she had been familiar with the items all of her life.

Defendant did not testify, introduced no evidence in his behalf and offered no explanation of his possession of the stolen goods.

He says that the Commonwealth has not carried the burden of proving a *prima facie* case against him, and that the evidence fails to establish the *corpus delicti* of the crime. To deal with this issue we amplify and summarize the facts already stated.

The burglary of the Cabiness home, and the theft of property therefrom, was discovered on April 19th. Christian had been arrested six days previously, approximately two blocks away from the Cabiness residence. He therefore was found in the immediate vicinity of the burglarized dwelling with the stolen goods in his possession.

Defendant, an alcoholic, was drunk at the time of his arrest. The home that had been burglarized was littered with debris and empty wine bottles. From this it is reasonable to assume that it had been broken into and occupied by persons addicted to the use of alcohol, or possibly vagrants. When defendant was arrested he became disorderly—conduct consistent with the actions of an alcoholic and a thief upon apprehension. Defendant's explanation of his possession of the goods was proven to be false. The goods in the possession of defendant were clearly identified as articles stolen from the Cabiness home. This home was being looked after by three friends and a sister of the owner. It is reasonable to believe under these circumstances that the breaking and entering would have been discovered within a reasonable time after it occurred. The discovery was in fact made only six days after the stolen goods were found in the possession of defendant.

In essence, the question we have to decide is whether the unexplained possession of stolen goods and the actions and explanations given by the possessor, together with the additional evidence, are sufficient to justify a finding that he is guilty of burglary.

It is the general rule that where goods have been obtained by means of a burglary or housebreaking, the fact of such possession is a most material circumstance to be considered by the jury, and where, in addition, other inculpatory circumstances are proved, such proof will warrant a conviction. There should be some evidence of guilty conduct, besides the bare possession of the stolen property, before the

presumption of burglary or housebreaking is superadded to that of larceny; but extrinsic mechanical indications may constitute such additional evidence. This statement finds support in *Hawley* v. *Commonwealth*, 206 Va. 479, 144 S. E. 2d 314 (1965); *Fout* v. *Commonwealth*, 199 Va. 184, 98 S. E. 2d 817 (1957); *Harris* v. *Commonwealth*, 185 Va. 26, 37 S. E. 2d 868 (1946); *Miller* v. *Commonwealth*, 185 Va. 17, 37 S. E. 2d 864 (1946); *Wilborne* v. *Commonwealth*, 182 Va. 63, 28 S. E. 2d 1 (1943); *Gravely* v. *Commonwealth*, 86 Va. 396, 10 S. E. 431 (1889).

*Williams* v. *Commonwealth*, 193 Va. 764, 71 S. E. 2d 73 (1952), cited by defendant, can be distinguished. There the defendant was charged with breaking and entering in the nighttime. The evidence failed to show when the alleged breaking occurred. In fact we held that the Commonwealth proved little more than that the accused had an opportunity to commit the crime, and we further stated that there must be some evidence of guilty conduct beyond the bare possession of the stolen property before the presumption of burglary or housebreaking is superadded to that of larceny.

In the case under review, the evidence supplies the guilty conduct. In the cases cited where the lapse of time has relevance, we usually find that the possession of stolen goods is not traced to the accused until after the theft has been discovered. Here we have the reverse of that situation, for the stolen goods were first recovered, and then the burglarized place located. While the actual date of the burglary was not established by the Commonwealth's witnesses, the evidence is sufficient to sustain the court's conclusion that the goods in the possession of defendant were the fruits of a burglary of the Cabiness home by defendant.

██ There exists the possibility that this home was broken into and entered by some individual other than defendant, and that he came into possession of the stolen goods by some means other than a burglary by him. However, the law does not require that the Commonwealth negate this remote possibility. *Avent* v. *Commonwealth*, 209 Va. 474, 164 S. E. 2d 655 (1968).

For the foregoing reasons, we are of opinion to affirm the judgment of the trial court.

*Affirmed.*