# 𝔖taunton

JAMES JUNIOR SULLIVAN, ALIAS, ETC. v. COMMONWEALTH OF VIRGINIA.

September 5, 1969.

Record No. 6959.

Present, All the Justices.

*Joseph B. Bullock*, for plaintiff in error.

*Walter H. Ryland, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error.

GORDON, J., delivered the opinion of the court.

The indictment in this case charged James Junior Sullivan with burglary of the Alexandria Housing Authority office on March 26, 1966. The trial court, sitting without a jury, convicted Sullivan of burglary and imposed a ten-year sentence. On this appeal Sullivan con-

tends that (1) a stolen credit card was improperly admitted in evidence because it was seized during an illegal search of his person, and (2) the evidence was insufficient to sustain a conviction of burglary.

During the night of March 25-26, 1966, someone forcibly entered the Alexandria Housing Authority office, ransacked the office and attempted to open the safe. On the next business day, Monday, March 28, an Esso credit card was found missing.

At about 2:00 a.m. on June 13, 1966, an Alexandria police officer, who had just received a report of another burglary, drove to a place where he expected the burglar to pass after leaving the scene of the crime. He saw Sullivan there and asked him to identify himself. When Sullivan refused to identify himself and cursed the officer, the officer told Sullivan he was under arrest for disorderly conduct.

Sullivan walked away, and when the officer attempted to detain him, Sullivan hit the officer with his fist. A struggle ensued, but when Sullivan thought the officer was drawing his gun, he stopped resisting and was handcuffed. After Sullivan was taken to police headquarters, a warrant was issued charging him with disorderly conduct, assault and battery, and resisting, obstructing or impeding a police officer in the performance of his duties.[1]

When Sullivan was searched at police headquarters, the Esso credit card stolen from the Housing Authority's office was found in his wallet. The credit card was seized and introduced in evidence at Sullivan's trial for the burglary of the Housing Authority office.

Sullivan did not testify at this trial, and he called only a fingerprint expert to testify on his behalf. The expert testified that latent finger-

---

[1] "If any person in the city behaves in a riotous or disorderly manner in any street, public building or other public place, he shall, upon conviction thereof, be punished by a fine not exceeding five hundred dollars or by imprisonment in jail for not more than twelve months or by both such fine and imprisonment." Alexandria, Va., Code § 23-39 (1963).

"Any person who shall commit assault upon another person, without legal excuse or justification, shall be punished by a fine of not less than five dollars nor more than one hundred dollars or by confinement in the city jail for a period of not more than thirty days, or by both such fine and imprisonment.

"Any person who shall commit assault and battery against another person, without legal excuse or justification, shall be punished by a fine of not less than five dollars nor more than five hundred dollars, or by confinement in the city jail for a period not to exceed six months, or by both such fine and imprisonment." Alexandria, Va., Code § 23-2 (1963).

"It shall be unlawful for any person to resist, interfere, obstruct or impede a city officer or employee in the discharge of his duties." Alexandria, Va., Code § 23-38 (1963).

prints taken from the Housing Authority's office did not match Sullivan's fingerprints.

(1) Sullivan concedes that the search of his person on June 13 would have been legal, though made without a search warrant, if he had been legally arrested. He contends, however, that his arrest was illegal because the Alexandria disorderly conduct ordinance is "unconstitutionally vague and overbroad".

But defense counsel conceded at oral argument that under the circumstances the police officer had the right to stop Sullivan and ask him for identification. So when Sullivan refused to identify himself, he committed the misdemeanor of obstructing an officer in the discharge of his duties. Alexandria, Va., Code § 23-38 (1963), *supra* n. 1. Since that misdemeanor was committed in the officer's presence, the officer had the right to arrest Sullivan. *Jordan* v. *Commonwealth*, 207 Va. 591, 151 S.E.2d 390 (1966). And it is immaterial that the officer advised Sullivan he was being arrested for disorderly conduct, instead of for obstructing an officer in the discharge of his duties. *Id.*

We therefore reject counsel's contention that Sullivan's arrest and the search of his person were illegal, without reaching the question whether the Alexandria disorderly conduct ordinance is valid.

█ Sullivan's attack on the sufficiency of the evidence raises the question whether his possession of the Esso credit card on June 13 sufficiently connects him with the burglary on March 25-26.

Under Virginia law, upon proof of a breaking and entering and a theft of goods, and if the evidence warrants an inference that the breaking and entering and the theft were committed at the same time by the same person and as a part of the same transaction, "the exclusive possession of the stolen goods shortly thereafter, unexplained or falsely denied, has the same efficiency to give rise to an inference that the possessor is guilty of the breaking and entering as to an inference that he is guilty of the larceny". *Drinkard* v. *Commonwealth*, 163 Va. 1074, 1083, 178 S.E. 25, 28 (1935); *Hawley* v. *Commonwealth*, 206 Va. 479, 144 S.E.2d 314 (1965); *Fout* v. *Commonwealth*, 199 Va. 184, 98 S.E. 2d 817 (1957).

In this case the Commonwealth proved a breaking and entering and a theft of a credit card, and the evidence warranted an inference that the breaking and entering and theft were committed at the same time by the same person and as a part of the same transaction. Sullivan contends, however, that no inference can be drawn in this case for two reasons. First, the credit card was not "recently" stolen when

it was found in Sullivan's possession on June 13. Secondly, the evidence that the latent fingerprints did not match Sullivan's fingerprints constituted "some evidence to negate [Sullivan's] involvement in the burglary".

*Wilborne* v. *Commonwealth*, 182 Va. 63, 28 S.E. 2d 1 (1943), disposes of Sullivan's first contention. In that case we held that where stolen goods were found in the defendant's possession approximately three months after the burglary, the recency of possession was a question of fact to be determined by the trier of fact.

We agree that the trier of fact could have concluded from the negative result of the fingerprint comparison that Sullivan did not enter the Housing Authority office. But that evidence did not explain Sullivan's possession of the stolen credit card. His possession being unexplained, the trier of fact could properly find that Sullivan was guilty of burglary.

*Affirmed.*