COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, O'Brien and AtLee
Argued at Lexington, Virginia

BARRY WATSON SHOUGH

MEMORANDUM OPINION[*] BY
v.        Record No. 1721-22-3        JUDGE MARY GRACE O'BRIEN
OCTOBER 10, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF PATRICK COUNTY
Marcus A. Brinks, Judge

Benjamin F. Sharpe (Rob Dean Law, on brief), for appellant.

J. Brady Hess, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Barry Watson Shough was convicted in a bench trial for eluding the police and possessing a

firearm after being convicted of a violent felony. Shough challenges the sufficiency of the evidence

to sustain his conviction for the firearm offense.[1] For the following reasons, we affirm his

conviction.

BACKGROUND

On appeal, we state the facts "in the light most favorable to the Commonwealth, the

prevailing party [below]." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald

v. Commonwealth*, 295 Va. 469, 472 (2018)). In doing so, we discard any of Shough's conflicting

evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences

that may reasonably be drawn from that evidence. *Gerald*, 295 Va. at 473.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Shough does not challenge his eluding conviction.

While on patrol the night of June 4, 2020, Patrick County Sheriff's Lieutenant Dustin Foley saw a pickup truck drive through a stop sign without stopping. Lieutenant Foley stopped the truck and found that Shough was the driver and his dog was in the cab. When the officer shone his flashlight inside the truck's cab, he saw "the end of a firearm" that was "right between the passenger and the driver's seat." He could see "the trigger guard, the barrel, and an orange sight on the end of the pistol." Lieutenant Foley, who was familiar with firearms, described the gun as a black semi-automatic handgun.

Lieutenant Foley told Shough that he saw the gun and instructed Shough to place his hands in view on the steering wheel. The officer tried to open the driver's door to get Shough out of the truck, but Shough responded that he "could not go to jail" and "this would put him away for a long time." Shough put the truck's transmission in drive. Lieutenant Foley stepped back and, with his hand on his holstered gun, ordered Shough to put the vehicle in park. Shough responded that the vehicle was in park, then sped off while Lieutenant Foley was standing beside the driver's side of the truck.

Lieutenant Foley pursued Shough for 7 miles, at speeds reaching 80 miles per hour. Eventually, he followed Shough down a dirt road and successfully blocked him in. After arresting Shough, Lieutenant Foley searched the truck but did not find a gun. Lieutenant Foley asked Shough where the gun was, and Shough denied having one. Lieutenant Foley responded that he had seen the gun in Shough's truck and repeated his question. Shough replied that he "couldn't tell [Lieutenant Foley] where it was."

Lieutenant Foley retraced the route of the pursuit to look for the firearm. About 100 yards from the location of the initial stop, the officer discovered three .45 caliber bullets in the road. Another officer found "the plastic bottom piece of a pistol magazine" for a .45 caliber handgun nearby. Lieutenant Foley waited in the area until daylight, at which point he located a .45 caliber

pistol on a grassy embankment "just past" where he initially stopped Shough's truck, on the same side of the highway. The gun did not appear "weathered" or rusted and had an orange sight. Lieutenant Foley testified that it looked like the gun he had seen in Shough's truck, and he recognized the orange sight.

At trial, Shough denied having a gun in his truck that day. He stated that he complied with Lieutenant Foley's demand to put his hands on the steering wheel and claimed that the officer threatened to shoot him if he did not put the truck in park. According to Shough, he sped away because the officer was reaching for his gun. Shough denied throwing anything from the vehicle and testified that he could not have rolled down the passenger window because the windows on his truck only operated with a hand crank. Shough admitted to having 13 felony convictions and other convictions for misdemeanors involving moral turpitude.

The court rejected Shough's testimony, determining that he lacked credibility. The court found that Lieutenant Foley's testimony and the attendant circumstances proved that Shough, a convicted violent felon, possessed a firearm and had thrown it out of the truck during the pursuit.

ANALYSIS

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)).

Code § 18.2-308.2(A) makes it unlawful for "any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm or ammunition for a firearm . . . ." "A conviction for the unlawful possession of a firearm can be supported

- 3 -

exclusively by evidence of constructive possession; evidence of actual possession is not necessary." *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009) (quoting *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008)). To prove constructive possession of a firearm, "the Commonwealth must present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm and that the firearm was subject to his dominion and control." *Id.* (quoting *Bolden*, 275 Va. at 148). "Whether evidence is sufficient to prove constructive possession 'is largely a factual' question and requires circumstantial proof 'that the defendant was aware of the presence and character of the [firearm] and that the [firearm] was subject to his dominion and control.'" *McArthur v. Commonwealth*, 72 Va. App. 352, 368 (2020) (alterations in original) (quoting *Smallwood*, 278 Va. at 630). "While no single piece of [circumstantial] evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" *Ervin v. Commonwealth*, 57 Va. App. 495, 505 (2011) (en banc) (alteration in original) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)).

Shough relies on his testimony that he did not have a gun and that the passenger side window was closed and could only be lowered with a hand-crank roller. He argues that "[i]t is highly implausible that [he] would have been able to drive his vehicle away from Officer Foley, lean over his center console and his dog, and roll the passenger side window down with a crank roller all while driving at high speed on a seven-mile pursuit."

However, in finding Shough guilty, the court rejected his testimony as not credible, finding that his numerous felony convictions and convictions for crimes of moral turpitude "strongly impeache[d]" his testimony. "It is well-established that '[d]etermining the credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the unique

- 4 -

opportunity to observe the demeanor of the witnesses as they testify,'" and we will not disturb the fact finder's credibility determinations unless plainly wrong. *Maust v. Commonwealth*, 77 Va. App. 687, 702 (2023) (en banc) (alterations in original) (quoting *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015)). Nothing in the record indicates that the court was plainly wrong in rejecting Shough's testimony. Indeed, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)). Further, the court was entitled to consider Shough's felony record and convictions for crimes of moral turpitude in assessing his credibility. *See* Code § 19.2-269; Va. R. Evid. 2:609(a); *see also Shifflett v. Commonwealth*, 289 Va. 10, 12 (2015) ("A felony conviction is probative of a witness's veracity . . . .").

In addition to rejecting Shough's defense, the court found that the Commonwealth's evidence contradicted Shough's claims. It accepted Lieutenant Foley's testimony that he saw a black handgun with an orange sight near Shough in the truck's cab. "[T]he testimony of a single witness, if found credible by the trial court and not found inherently incredible by this Court, is sufficient to support a conviction." *McCary v. Commonwealth*, 36 Va. App. 27, 41 (2001). Moreover, other evidence corroborated Lieutenant Foley's testimony. When the officer announced that he saw the gun and ordered Shough to put his hands on the steering wheel, Shough responded that he "could not go to jail" and "this would put him away for a long time." Shough's statements demonstrated that he knew the gun was in the truck and that it was illegal for him to possess it. Shough then put the truck in drive and fled. "Flight following the commission of a crime is evidence of guilt . . . ." *Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018) (quoting *Clagett v. Commonwealth*, 252 Va. 79, 93 (1996)).

After Shough was apprehended, officers discovered .45 caliber bullets, "the plastic bottom piece of a pistol magazine" for a .45 caliber handgun, and a handgun matching the description of the gun Lieutenant Foley saw in Shough's truck. All of these items were found along the route of pursuit and near where Shough was initially stopped. The condition of the gun suggested that it had not been exposed to the elements for any appreciable time.

Considering these facts and circumstances in their totality, the court was not plainly wrong in finding the evidence sufficient to prove that Shough knowingly had a gun in his truck, that it was subject to his dominion and control, and that he was therefore guilty of violating Code § 18.2-308.2.

## CONCLUSION

For these reasons, we affirm the judgment of the trial court.

*Affirmed.*