COURT OF APPEALS OF VIRGINIA

Present: Judges Causey, Friedman and Senior Judge Clements
Argued at Richmond, Virginia

VERRELL MCDONALD, S/K/A
 VERRELL R. MCDONALD
                                                MEMORANDUM OPINION* BY
v.      Record No. 1197-23-2                    JUDGE DORIS HENDERSON CAUSEY
                                                        APRIL 29, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE GEORGE COUNTY
W. Edward Tomko, III, Judge

David George Parker for appellant.

Ryan Beehler, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Verrell R. McDonald appeals his convictions, following a bench trial, for possessing a

Schedule I or II controlled substance, possessing a firearm after conviction of a non-violent

felony within ten years of his conviction, and possessing a firearm while possessing a Schedule I

or II controlled substance, in violation of Code §§ 18.2-250, -308.2, and -308.4.[1]  On appeal,

McDonald argues that the evidence was insufficient to prove his convictions.  For the following

reasons, we disagree and affirm the convictions.

                                    BACKGROUND

We recite the facts "in the light most favorable to the Commonwealth, the prevailing

party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (internal

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] McDonald was also convicted of possessing a Schedule III controlled substance and
possessing marijuana.  McDonald does not challenge these convictions on appeal.

quotation marks omitted) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

The Commonwealth's trial evidence centered on the testimony of former Prince George County Police Officer Justin Gilbert. According to Officer Gilbert, on May 3, 2020, he was sitting at a gas station when he observed a man enter the parking lot on foot and meet another man who was pumping gas into a vehicle. After the men exchanged words, one of them, later identified as McDonald, went into the gas station while the other, later identified as Kelvin Gant, sat on the curb. Officer Gilbert moved his vehicle into a parking spot to better observe the parties.

When McDonald returned from the gas station, Gant pointed at Officer Gilbert's vehicle. Both men then entered the vehicle and drove away. Officer Gilbert followed. Officer Gilbert conducted a traffic stop because the tint on the vehicle was extremely dark.

When Officer Gilbert arrived at the driver's window, he detected a strong odor of marijuana. Officer Gilbert took McDonald's license, asked McDonald and Gant to exit the vehicle, detained them, and brought the pair to the front of his patrol vehicle. McDonald and Gant stood detained about three to four feet apart. While waiting for backup to arrive, Officer Gilbert observed a small bag containing a white rock-like substance on the ground at McDonald's feet. Testing later revealed that the substance was cocaine. The bag was "within a foot" of McDonald's feet and "two to three feet from Mr. Gant." When asked about the baggie, McDonald and Gant both denied that it was theirs.

Before searching the vehicle, Officer Gilbert asked McDonald if he would find anything in the car. According to Officer Gilbert's testimony, McDonald acknowledged that "there was a gun in the back of the car." Upon searching the vehicle Officer Gilbert discovered a green Crown Royal bag under the driver's seat. Within the bag were suboxone strips, a large quantity of clear bags, and U.S. currency. In the center console, Officer Gilbert found a scale and a bag containing a green plant substance. Testing revealed that the substance was marijuana. Then, Officer Gilbert testified, "under the passenger seat, near the backseat was a black handgun with a grip towards the driver's side." Officer Gilbert believed that the gun was a nine-millimeter Taurus GTC. The handgun's safety was off. Officer Gilbert rendered the firearm safe by clearing the round from the chamber and removing the loaded magazine from the handgun.

On the backseat, Officer Gilbert discovered a bookbag. The bookbag contained a firearm's magazine, a large quantity of unused clear bags, a scale, and unused lottery tickets. Officer Gilbert believed the magazine contained rounds consistent with the firearm he had found. Officer Gilbert testified that when he asked McDonald about the items found, McDonald told Officer Gilbert that the gun and suboxone were his girlfriend's and that he did not know about the other drugs found in the vehicle. McDonald asserted that the baggies were for his job cutting grass. McDonald stated that the vehicle he was driving was in his mother's name and that he paid for the vehicle.

Tiara Washington, McDonald's fiancée, testified that on May 2, 2020, she and McDonald had gone to her cousin's house for a birthday party. Washington had packed her nine-millimeter G2 firearm and a loaded magazine into McDonald's car but left the firearm in the vehicle when they arrived at the party. She testified that she never told McDonald that her firearm was in his car that evening and claimed that McDonald did not know that she owned a firearm at all.

Washington testified that she placed the firearm on the floor of the backseat of the car. On cross examination, she specified that the items were in her "pocketbook" in that location. When asked by the Commonwealth's attorney whether, "if I told you that a book bag was found in your back seat, . . . that [would] have been" the aforementioned "pocketbook," Washington said yes. Washington testified that it was possible that the gun had fallen out of the bag. When asked to explain the bookbag's contents, Washington testified that she often carried around unused lottery tickets, clear baggies, and a scale to check the marijuana that she buys. Washington denied ownership of the suboxone found and denied that she knew that McDonald was a felon. Finally, Washington asserted that the safety of her gun was on.

McDonald testified that he was filling his car's gas tank when Gant, whom he knew through work, approached him. Gant asked McDonald for a ride to Hopewell. McDonald agreed. Upon returning to his vehicle from inside the gas station, McDonald noticed a white Ford Explorer at a stop sign but thought nothing of it. He and Gant then entered his car and drove away.

Soon after, McDonald testified, he noticed blue lights behind him and immediately pulled over. McDonald rolled down his window and produced his license. When Officer Gilbert arrived at his window, Officer Gilbert demanded that McDonald exit the vehicle. When McDonald exited the vehicle, he was immediately detained in handcuffs. After being patted down, Officer Gilbert took McDonald to stand in front of his unmarked patrol vehicle. Officer Gilbert then went into his patrol vehicle before extracting Gant from the front passenger seat. When Gant exited the vehicle, Officer Gilbert placed him near the passenger's side tire well. Officer Gilbert then searched McDonald for a second time.

McDonald testified that when a second officer arrived, Officer Gilbert asked McDonald whether he had anything in the vehicle, and McDonald replied that there was a small quantity of

marijuana in the center console. In contradiction to Officer Gilbert's testimony, McDonald testified that he did not tell Officer Gilbert that there was a gun in the car. McDonald also stated that it was the second officer, not Officer Gilbert, who discovered the baggie of cocaine in the grass. McDonald confirmed that when the firearm was found, he told Officer Gilbert that the firearm was Washington's. McDonald explained at trial that Washington was his vehicle's only other passenger aside from his mother. McDonald testified that he told the officer that the baggies were for his job in landscaping and denied having made any statement about the suboxone.

At trial, McDonald admitted that he had previously been convicted of a felony and that the suboxone found in the car was his.[2] McDonald affirmed that he had not known that Washington had a firearm at all, or that it was in his vehicle that day.

In rebuttal, Officer Gilbert asserted that unlike the firearm, which he had testified was found under the front seat, the bookbag was found on, not under, the backseat.

At the close of all the evidence, McDonald renewed his motion to strike the charges. In relation to the possession of cocaine charge, he noted that the drugs were found on the ground outside the patrol vehicle and that neither he nor Gant had taken responsibility for the baggie. Concerning the gun charges, McDonald stated that he did not know about the gun and that it was not within his wingspan. And he emphasized Washington's testimony that the firearm was hers and that she had never informed McDonald about the firearm. Finally, McDonald noted that Officer Gilbert had admitted that he did not remember the exact wording McDonald used when discussing the firearm.

After hearing the motion to strike, the trial court found that Officer Gilbert had conducted a traffic stop, extracted McDonald from the vehicle and questioned him. The trial court also

---

[2] The Commonwealth introduced McDonald's prior felony convictions into evidence.

found that McDonald had admitted to Officer Gilbert that there was a firearm and suboxone in the vehicle and that those items belonged to his girlfriend. The trial court stated that although Washington had testified that the firearm was hers, her description of where the firearm was kept had evolved during her testimony. Additionally, the cocaine had been found near McDonald's foot while he was being detained outside the vehicle. The trial court denied McDonald's motion.

In closing, McDonald stated that "he would have been an idiot" to have admitted to Officer Gilbert that there was a gun in the vehicle as a convicted felon. He reiterated that Washington had never mentioned to him that the firearm was in his vehicle and that she consistently testified to this fact. Thus, McDonald argued, he had no knowledge of the firearm. McDonald also contended that he did not exercise dominion and control over the firearm because it was not found within his reach. The trial court convicted McDonald of the charges and sentenced him to four years of active incarceration. McDonald appeals.

ANALYSIS

I. Procedurally Defaulted Assignments of Error

In McDonald's first, third, and fifth assignments of error he assigns error to the trial court "denying Mr. McDonald's motion to strike at the conclusion of the Commonwealth's case." This articulation of his assignments of error, and his argument on brief, make clear that he appeals only the denial of his motions to strike made at the close of the Commonwealth's case in chief. "Our case law makes clear that '[w]here a defendant presents evidence, he waives any motion to strike made at the close of the Commonwealth's evidence.'" *Aponte v. Commonwealth*, 68 Va. App. 146, 165 (2017) (alteration in original) (quoting *Taylor v. Commonwealth*, 58 Va. App. 185, 189 (2011)); *see also Hutton v. Commonwealth*, 66 Va. App. 714, 718 n.2 (2016) (noting that although appellant assigned error to the trial court's denial of his motion to strike made at the conclusion of the Commonwealth's evidence, appellant waived that assignment of error by introducing evidence in

- 6 -

his own behalf); *Murillo-Rodriguez v. Commonwealth*, 279 Va. 64, 74 (2010) ("[A]fter the denial of a motion to strike the Commonwealth's evidence, . . . by putting on additional evidence, the defendant waives his ability to challenge the sufficiency of the Commonwealth's evidence in isolation."). Because McDonald waived any objection to that denial when he presented his own evidence, we will not consider these issues on appeal.

## II. Sufficiency of the Evidence

In his second, fourth, and sixth assignments of error, McDonald argues that the evidence was insufficient to support his convictions. McDonald argues that he had no knowledge of the firearm and that he did not exercise dominion or control over it. McDonald notes that despite Officer Gilbert's testimony that he stated that there was "a gun in the back of the car," no gun was ever located in the back of the car. Instead, the gun was found under the passenger's seat. Additionally, McDonald emphasizes that he never described the caliber or brand of the firearm found, nor was he forensically tied to the firearm through DNA or otherwise. Instead, McDonald repeatedly stated that the gun belonged to his girlfriend. Washington, McDonald argues, corroborated his version of events when she testified that the firearm was hers and opined that it likely slid out of her bookbag. McDonald further asserts that Officer Gilbert was an unreliable witness and contends that the officer's roadside inspection of the alleged firearm failed to establish the item found could fire a projectile by means of an explosion.

Lastly, McDonald argues that the Commonwealth's theory of the case is illogical. He contends that it would be irrational for him to remove the cocaine from his person yet discard it so near to him that officers would inevitably discover it. He contends that the more logical theory is that the cocaine belonged to Gant. He notes that the cocaine was also near Gant and that the police never patted down or searched him. He asserts that the more likely conclusion

from the evidence is that Gant disposed of the cocaine to implicate McDonald rather than himself.

## A. Standard of Review

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

## B. Applicable Law

"It is unlawful for any person knowingly or intentionally to possess a controlled substance . . . ." Code § 18.2-250(A). Additionally, it is it unlawful for "any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm." Code § 18.2-308.2(A). Finally, Code § 18.2-308.4(A) provides that "[i]t shall be unlawful for any person unlawfully in possession of a controlled substance classified in Schedule I or II of the Drug Control Act . . . to simultaneously with knowledge and intent possess any firearm."

"In order to convict a person of illegal drug possession, the Commonwealth must prove beyond a reasonable doubt that the accused was aware of the presence and character of the drug and that the accused consciously possessed it." *Yerling v. Commonwealth*, 71 Va. App. 527, 532 (2020) (citing *Jones v. Commonwealth*, 17 Va. App. 572, 574 (1994)). Possession of contraband "may be actual or constructive." *Hall v. Commonwealth*, 69 Va. App. 437, 448 (2018).

The Commonwealth can prove constructive possession by showing that there are "acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and the character of the substance and that it was subject to his dominion and control." *Id.* (quoting *Logan v. Commonwealth*, 19 Va. App. 437, 444 (1994) (en banc)). "Mere proximity to a controlled drug is not sufficient to establish dominion and control." *Yerling*, 71 Va. App. at 532 (quoting *Drew v. Commonwealth*, 230 Va. 471, 473 (1986)). Although "ownership or occupancy alone is insufficient to prove knowing possession of [contraband] located on the premises or in a vehicle," circumstantial evidence coupled with ownership or occupancy may establish the constructive possession of such contraband. *Burchette v. Commonwealth*, 15 Va. App. 432, 435 (1992). Additionally, possession may be joint or several. *Smallwood v. Commonwealth*, 278 Va. 625, 631 (2009).

Likewise, "[a] conviction for the unlawful possession of a firearm can be supported exclusively by evidence of constructive possession; evidence of actual possession is not necessary." *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008). To prove that a defendant constructively possessed a firearm, "the Commonwealth must present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm and that the firearm was subject to his dominion and control." *Id.* (quoting *Rawls v. Commonwealth*, 272 Va. 334, 349 (2006)). Proximity to the firearm "is a

circumstance probative of possession and may be considered as a factor in determining whether the defendant possessed the firearm." *Id.*

"It is firmly established that '[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

"The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). "The trier of fact is not required to accept a party's evidence in its entirety, but is free to believe or disbelieve, in whole or in part, the testimony of any witness." *English v. Commonwealth*, 43 Va. App. 370, 371 (2004) (internal citations omitted). "Ultimately, 'the issue [of what constitutes constructive possession] is largely a factual one' left to the trier of fact, not the appellate court." *Bagley v. Commonwealth*, 73 Va. App. 1, 28 (2021) (alteration in original) (quoting *Smallwood*, 278 Va. at 630).

"[M]erely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given evidence is a matter for the [factfinder] to decide." *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017) (second and third alterations in original)

- 10 -

(quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)).  "By finding [a] defendant guilty, therefore, the factfinder 'has found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'"  *Id.* (alteration in original) (quoting *Haskins*, 44 Va. App. at 9).  "While a factfinder may not arbitrarily disregard a reasonable doubt, whether 'the hypothesis of innocence is reasonable is itself a "question of fact," subject to deferential appellate review.'"  *Burton v. Commonwealth*, 58 Va. App. 274, 285-86 (2011) (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 572 (2009) (en banc)).

### C.  Analysis

Here, the direct and circumstantial evidence presented was sufficient for a reasonable factfinder to conclude beyond a reasonable doubt that McDonald knowingly possessed both the firearm and the cocaine and further that he possessed these items simultaneously.

First, there was sufficient evidence to support McDonald's conviction for the possession of cocaine.  The location of the cocaine, within a foot of McDonald's feet and on the side of the road, was a circumstance tending to show that McDonald had dropped the drugs after holding them or otherwise having them on his person—and that therefore, McDonald had been in possession and control of the cocaine and was aware of its presence and character.  *See Hall*, 69 Va. App. at 448.  Another circumstance that a factfinder could have reasonably considered supportive of this finding was McDonald's admission at trial that he possessed another controlled substance found in his car, suboxone.  *See Burchette*, 15 Va. App. at 435 (ownership or occupancy of vehicle in which contraband found, combined with circumstantial evidence, sufficient to prove possession).  A reasonable factfinder could have also considered the fact that McDonald's car contained marijuana and other apparent drug paraphernalia.

The drugs' location on the side of the road, where only McDonald or Gant could be reasonably thought to have dropped them, McDonald's possession of other controlled substances

at the scene, and the presence of drug paraphernalia in McDonald's car, distinguish the case at bar from a case of "mere proximity." *Yerling*, 71 Va. App. at 532. A reasonable factfinder considering all the evidence could have found to be unreasonable the alternative hypothesis that the drugs fell from Gant's person and that McDonald did not jointly possess the drugs. *See Rams*, 70 Va. App. at 27 (the factfinder may conclude guilt beyond a reasonable doubt from the "combined force of many concurrent and related circumstances, each insufficient in itself" (quoting *Muhammad*, 269 Va. at 479)); *Smallwood*, 278 Va. at 631 (joint possession sufficient). We owe significant deference to the trial court's determination that there was no reasonable hypothesis of innocence. *See Burton*, 58 Va. App. at 285-86. *See also Edwards*, 68 Va. App. at 301 (the factfinder determines the weight to give evidence). The trial court's determination that McDonald possessed the cocaine was not plainly wrong or without evidence to support it. *See McGowan*, 72 Va. App. at 521.[3]

Second, there was sufficient evidence to support McDonald's conviction for possession of a firearm within ten years of his felony conviction. Officer Gilbert testified that McDonald stated to him that there was a gun in his vehicle, and Officer Gilbert found a gun in McDonald's vehicle. Though McDonald denied telling Officer Gilbert that there was a gun in his vehicle, the trial court was free to credit Officer Gilbert's testimony and find that McDonald's testimony lacked credibility.[4] *See Blankenship*, 71 Va. App. at 619; *English*, 43 Va. App. at 371. A

---

[3] Additionally, contrary to McDonald's argument on appeal, concluding that McDonald dropped the drugs near his own feet does not require believing that McDonald acted illogically— a reasonable factfinder could conclude from the evidence that McDonald had acted in haste in an attempt to avoid the appearance that he possessed the drugs.

[4] McDonald also suggests that Officer Gilbert's testimony was unreliable due to his admission that he could not recall whether he was in a marked or unmarked car on the day of the incident and what McDonald argues were discrepancies in Officer Gilbert's testimony regarding the number of times that McDonald was patted down and when he was ordered out of the vehicle. An appellate court, however, will defer to a trial court's credibility determination unless the testimony is "inherently incredible, or so contrary to human experience as to render it

reasonable factfinder could have concluded from McDonald's statement, combined with the presence of the gun in the car, that McDonald was aware of the firearm's presence and character and that the firearm was subject to his dominion and control. *See Bolden*, 275 Va. at 148. Additionally, the fact that McDonald was in close proximity to the place where the gun was found is also a factor that the factfinder could have considered to draw this conclusion. *See id.*

McDonald also emphasizes Officer Gilbert's testimony that McDonald told him that the gun belonged to Washington. The relevant question, however, was not ownership of the weapon, but awareness, dominion, and control, all factors supported by McDonald's statement that there was a gun in the car and the gun's proximity to McDonald's place in the car. *See id.* McDonald next points out that the gun was not actually in the back of the car, but under the passenger's seat. But this apparent discrepancy is minor enough that it would not interfere with the reasonable conclusions that could be drawn from McDonald's statement that a firearm was in the car. McDonald further argues that there was insufficient evidence that the item discovered was actually a gun. But a reasonable factfinder could conclude from the available circumstantial evidence— including McDonald's statement to Officer Gilbert there was a firearm in the car and Officer Gilbert's discovery of magazines that he believed matched the gun—to support the conclusion that the item discovered was a gun. *See Kelley*, 69 Va. App. at 629 (circumstantial evidence).[5] And,

---

unworthy of belief." *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000) (quoting *Fisher v. Commonwealth*, 228 Va. 296, 299 (1984)). Even if the points raised by McDonald constitute discrepancies, they are too minor to permit appellate interference with a trial court's credibility determination.

[5] We will not consider McDonald's argument, made for the first time on appeal, that the Taurus gun make and model that Officer Gilbert stated he found was not an actual make and model. The argument was not made in trial and is thus procedurally defaulted under Rule 5A:18, and it relies on a reference to evidence not in the record of this case. "The consideration of facts outside of and not made a part of the record is improper." *Taylor v. Commonwealth*, 78 Va. App. 147, 155 (2023) (quoting *Bernau v. Nealon*, 219 Va. 1039, 1041-42 (1979)).

contrary to McDonald's final argument, proof beyond a reasonable doubt of constructive possession does not require DNA or forensic analysis.

Finally, because there was sufficient evidence to support the trial court's conclusion that McDonald possessed a firearm, and sufficient evidence to support the conclusion that McDonald possessed cocaine, there was sufficient evidence for McDonald's conviction for simultaneous possession of the two items.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*